NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
|  | x |  |
| IRENE O'CONNELL, | x | Hon. Stanley R. Chesler, U.S.D.J. |
|  | x |  |
| plaintiff, | x |  |
|  | x | Civil Action No. 04-3499 |
| v. | x |  |
|  | x | **OPINION** |
| UNUM PROVIDENT, et al., | x |  |
|  | x |  |
| defendants. | x |  |
|  | x |  |

_____x

**CHESLER, District Judge**

## I.      INTRODUCTION

Plaintiff Irene O'Connell brings this action to reverse defendants Unum Provident Corporation ("Unum Provident") and Unum Life Insurance Company of America's (collectively "Unum") denial of her disability benefits under an employee benefits plan governed by the Employee's Retirement Income Security Act ("ERISA").  Unum previously filed a summary judgment motion against plaintiff, which the Court granted in part and denied in part in a February 3, 2006 Opinion and Order.  [Docket Entries No. 17 & 18.]  The Court granted defendants' motion with respect to plaintiff's claims for disability arising from her previous surgeries.  It denied their motion to the extent plaintiff's disability arose from a mental condition, such as anxiety and depression, and invited plaintiff to file a motion "so it may determine whether or not there is any issue of material fact as to plaintiff's entitlement to such benefits." (February 3, 2006 Opinion at 30.)  The instant matter comes before the Court by way of

1

plaintiff's motion for summary judgment on her claims for benefits for disability related to a

mental illness or disorder.  For the following reasons, plaintiff's motion is **GRANTED**.

The record before this Court is the same as that which it considered in rendering the

February 3, 2006 Opinion and the facts recited in that Opinion are incorporated herein by

reference.  Plaintiff argues that these facts support a finding that Unum erroneously denied her

benefits under the General and Supplemental policies.  She seeks summary judgment on benefits

available to her for disability related to a psychiatric condition or illness.

In their opposition, defendants argue plaintiff is not entitled to such benefits because (1)

she failed to show disability due to psychiatric impairment within the coverage period

(Opposition Br. at 16-17); (2) plaintiff cannot prove she was under the regular and appropriate

care of a physician for any psychiatric condition as of her alleged date of disability and

throughout the 180-day elimination period (id. at 17-23; 24-25); and (3) Dr. Papka's test

methodology was insufficient and unreliable (id. at 26-27).  The plaintiff generally disputes each

of these arguments and relies upon the analysis set forth by the District Court in its February 3,

2006 Opinion.  (Reply at 1-2.)

## II.     DISCUSSION

### A.     Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing

the facts in the light most favorable to the non-moving party, the moving party is entitled to

judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d

Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c).

Rule 56(e) of the Federal Rules of Civil Procedure requires that "[w]hen a motion for summary

judgment is made and supported as provided in this rule, an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial." See Celotex, 477 U.S. at 324; Dowling v. City of Philadelphia, 855

F.2d 136, 142-43 (3d Cir. 1988).  Thus, the Court must decide if there is any issue of material

fact as to whether or not plaintiff is entitled to the benefits she seeks.  To resolve this issue, the

Court must articulate the standard of review for the claims determinations.

**B.      Standard of Review**

In its February 3, 2006 Opinion, the Court determined the appropriate standard of review

in this case.  The defendants state in their brief that "[t]he Court has already determined that the

applicable standard of review in this matter is the arbitrary and capricious standard."  (Opp. Br. at

14.)   In its previous opinion, however, the Court held that, pursuant to Pinto v. Reliance

Standard Life Ins., Co., 214 F.3d 377, 387 (3d Cir. 2000), the structural conflict of interest in

defendants' claims determination process called for "a higher level of scrutiny to Unum's claims

determinations than the 'arbitrary and capricious' standard proposed by the defendants."

(February 3, 2006 Op. at 21-22.)  In considering the level of scrutiny applied, the Court noted the

structural conflict among the defendants (id. at 21-22); the sophistication of the parties (id. at

22); the appearance of selectivity by defendants' witnesses (id.); and the lack of any medical

examination of the plaintiff by Unum (id. at 27).  Given that the record and circumstances are

unchanged since the Court's previous opinion, the Court shall apply the same heightened

standard of review in evaluating Unum's denial fo plaintiff's claim for disability benefits.

####     C.       Evidence of Disability Due to Mental Illness or Disorder

Defendants argue there was insufficient evidence of plaintiff's disability due to a mental

illness or disorder on or before the last day of her active employment.  (Opp. Br. At 16-17.)  They

argue plaintiff's neuropsychological evaluation from January 2004 was done ten months after she

stopped working and, therefore, was properly disregarded by the claims administrator.  (Id.)  In

support of this argument, defendants cite Dunbar v. Orbital Sciences Corp. Group Disability

Plan, 265 F. Supp. 2d 572 (D. Md. 2003); and Germaine v. Unum Life Ins. Co. of Am.,No. Civ.

A. 03-0104, 2004 WL 2624873 (N.D. Ga. Sept. 23, 2004).  In those cases, the courts held that

medical reports indicating a disability after the beneficiaries' last date of eligibility should be

afforded little if any weight in determining whether or not the applicant was disabled within the

eligibility period.  The Court does not find the same infirmity with Dr. Papka's report.  Unlike

the medical evidence in Dunbar and Germaine, the Papka Report showed that plaintiff's

disability arose within the eligibility period.  Although the Papka Report was generated after the

eligibility period, it relied upon plaintiff's medical history, which harkened back to the severe

distress and anxiety that began in March 2003, within the coverage period.  (See UACL00207.)

Based on this history, and her examination of the plaintiff, Dr. Papka concludes that these

"severe levels of psychological distress with moderate to severe levels of intensity" were

"suggestive of a Generalized Anxiety Disorder and Major Depressive Syndrome."

(UACL00207.)  Moreover, Dr. Ferraro also evaluated these symptoms as disabling within the

coverage period.  Thus, unlike the cases cited by defendants, the record here contains evidence of

disability due to the later diagnosed mental condition within the time that plaintiff was eligible

for benefits.

The Court further notes that defendants do not cite evidence, or even argue, for the proposition that plaintiff was not disabled during the elimination period.  Under both the Group Policy and the Supplemental Policy, a beneficiary is disabled if she is limited from performing the duties of her own occupation for 24 months.  Thereafter, to continue to recover benefits, a beneficiary must show an inability to perform the duties of any gainful occupation.[1]  Given that

---

[1]The Group Policy defines "Disability" as follows:
   You are disabled when Unum determines that:

   –   you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
   –   you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

   After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

(UACL 00475.)  Under the Supplemental Policy, "total disability" is defined as follows:
   Total Disability, or totally disabled, during the first two years of a period of disability, means that, due solely to Injuries or Sickness:
   1.   You are not able to perform the substantial and material duties of your occupation; and
   2.   You are not working in any other gainful occupation.
   Thereafter, Total Disability, or totally disabled, means that, due solely to Injuries or Sickness, you are not able to perform the duties of any gainful occupation for which you are suited based on your education, training, and experience.

   You must be receiving the care of a Physician which is appropriate for the condition causing your disability.  We will waive this requirement when we are furnished proof, satisfactory to us, that continued care would no longer be of benefit to you.

(UACL 0036.)

the benefits at issue here are limited to 24 months[2], the Court is only concerned with the evidence suggesting that plaintiff was unable to perform her own job function.  The record shows that plaintiff had a fairly substantial position at Financial Resources, which involved debt collection.  There is evidence that her performance changed at some point and, when these changes manifested themselves in her mistakenly issuing certain checks, her manager stated she was "not the same girl" as she had been.  This evidence is uncontroverted.  Moreover, the Court notes that defendants submitted no evidence, nor did they argue, that plaintiff was able to perform her own job function, which is the test under the policies.  Defendants deflected plaintiff's assertions of disability by attributing her "stresses" to her relationship with her manager and job-specific circumstances and found they did not support a finding of disability, a conclusion this Court has already found to be an insufficient basis for the denial of benefits.

Nothing in defendants' experts' reports even purports to evaluate how plaintiff's symptoms related to her job task.  Rather, their argument is limited to the sufficiency of plaintiff's evidence of disability due to a mental illness or disorder.  Defendants argue that Dr. Ferraro's diagnoses, which included multiple references to increased stress and inability to retain information and function at work, was insufficient because it attributed these mental conditions to plaintiff's brain aneuruysm. (Opp. Br. at 16.)   The Group Policy, however, defines "Mental Illness" as "a psychiatric or psychological condition regardless of cause . . . . " (UACL00455) (emphasis added).  The Supplemental Policy defines "mental disorder" as "any disorder . . . classified in the Diagnostic and Statistical Manual of Mental Disorders (DSM)," including

---

[2]It is undisputed that benefits resulting from a "mental illness" under the Group Policy or a "mental disorder" under the Supplemental Policy are generally limited to 24 months. (See UACL00469 and UACL00049.)

"psychotic, emotional, or behavioral disorders, or disorders relatable to stress . . . ."  (UACL

00033.)  The Court is satisfied, therefore, that Dr. Ferraro's evaluation[3] and conclusion that

plaintiff is disabled, coupled Dr. Papka's later evaluation and diagnosis, proves plaintiff's

entitlement to disability benefits due to a mental condition.

For these reasons, the Court holds that Unum erred in denying plaintiff's claims.  Given

the Court's finding regarding the sufficiency of evidence, and the lack of any argument that

plaintiff did not actually suffer from a disability as described in the Papka Report during the

period of eligibility, summary judgment in plaintiff's favor is proper.

**D.**     **Regular and Appropriate Treatment by a Physician**

Defendants further argue, as they did in connection with their previous motion for

summary judgment, that plaintiff is precluded from receiving disability benefits because she did

not receive the regular and appropriate care of a physician for any psychiatric condition.  (Opp.

Br. at 17-23.)  The Court relies, for the most part, on its analysis in connection to the prior

motion.  There, the Court, analyzing the same record that is before it today, stated:

> Likewise, the Court finds that defendants' conclusion that
> plaintiff did not receive regular and appropriate medical treatment
> under the policies to be somewhat flawed.  The Group Policy
> requires that a participant demonstrate "regular care" by a
> physician.  (UACL 00484.)  "Regular care" means the participant
> (1) "personally visit[ed] a physician as frequently as medically
> required" to effectively manage and treat the disabling condition
> and (2) receive the most appropriate treatment and care, which

---

[3]The defendants argue that Dr. Ferraro's "mini mental" exam was not insufficient to
support a finding of disability.  Dr. Ferraro's conclusions of the exam were corroborated by his
subsequent medical evaluations of plaintiff and, ultimately, by the Papka Report.  Although
Unum's experts, all of whom are Unum employees, take issue with the sufficiency of this
evidence, they have not introduced evidence that conflicts with the assertion that she was
disabled during the relevant time period.

conforms with generally accepted medical standards for the disabling condition by a physician who is the most appropriate to handle such condition. (UACL 00484.)

The record shows evidence of cognitive impairment in Dr. Ferraro's notes from plaintiff's March 14, 2003 visit, where he noted plaintiff's "anxiety 2nd job." (UACL 00234.) Her cognitive difficulties were documented again in connection with plaintiff's March 31, 2003 follow-up, where Dr. Ferraro noted that she was "presenting to this office for follow-up because of difficulties at work, especially with retention" and was having difficulty performing job functions. (UACL 00437.) During that visit, Dr. Ferarro performed a mini-mental exam, which showed deficits in the "Attention and Calculation" and "Recall" categories. (UACL 00423.) Based on this, Dr. Ferraro concluded plaintiff "is disabled from present work" and "will commence disability on 4/14/03 and be on permanent/long term disability" and recommended that she see a neurologist. (UACL 00241.) The record further reflects treatments by Dr. Ferraro on June 3, 2003 (UACL 00255), July 3, 2003 (UACL 00254), August 21, 2003 (UACL 00253), all of which note "memory loss" in the Assessment section of the form. Notes from the July 3, 2003 and August 21, 2003 visits also reference plaintiff's treatment with the memory loss drug, Aricept. (UACL 00253-00254.) Dr. Neuren knew plaintiff had been treating with Aricept but dismissed this by stating "is no reference to her taking this agent on the most recent visits of 1/02/03." (UACL 00222.)

Dr. Papka then saw the plaintiff on January 26 and 27, 2004. The Papka Report recites the plaintiff's encounter with her supervisor where she was told she was not the girl she used to be and references cognitive impairment issues from that time forward. (UACL 00207.) The Papka Report further notes severe impairment in plaintiff's psychomotor speed using the dominant hand, written arithmetic, and simple tracking; moderate impairment in plaintiff's verbal recognition and timed three-dimensional visuospatial construction; and mild impairment with respect to her rote attention, working memory, figural memory, written language, confrontational naming, visuospatial construction, mental flexibility and speed, and verbal fluency to letters. (UACL 00204.) Dr. Papka concluded that the most likely cause of this impairment is anxiety and depression. (UALC 00204.) The report notes that her increased level of anxiety over these cognitive issues was "gradually getting worse." (UALC 00207.) The record further shows that plaintiff commenced taking

the depression drug Wellbutrin during the week of March 10, 2004
and continued her sleep study sessions, which completed on March
16, 2004.  (UACL 00194.)

       Unum's experts' contend this history reflects inadequate
treatment for cognitive defects under the policies.

. . .

       Notably, the Court finds the five-week delay between Dr.
Papka's recommendations and plaintiff's treatment with
Wellbutrin to be of minimal import to her claims applications.
While defendants argue this is not "regular treatment" under the
policies, the record contains no evidence that this minor delay
interrupted treatment necessary to effectively treat plaintiff's
disabling condition.  Nor does the Court find it to be probative of
her ability to function at work.

(February 3, 2006 Opinion at 27-29.)

The Court is further unpersuaded by defendants' citation to <u>Gough v. Metropolitan Life</u>

<u>Insuance Co.</u>, 2003 WL 23411993 (M.D. Tenn. Nov. 21, 2003).  (Opp. Br. at 17-20.)  In <u>Gough</u>,

the United States District Court for the Middle District of Tennessee held that Metropolitan

Life's denial of plaintiff's claims for disability based on a psychiatric condition were not arbitrary

and capricious.  <u>Id.</u> at *12.  The Court reasoned that:

the record does not show that Plaintiff is disabled by mental
limitations and psychological problems.  Both Drs. Solomon and
Walker found evidence of malingering by Plaintiff during their
psychological testing, which casts doubt on Plaintiff's subjective
claims of psychological problems and disability.  Dr. Abou-
Khalil's findings that Plaintiff suffered from memory loss,
confusion, and inability to function were based only on Plaintiff's
subjective complaints.  Plaintiff has never been definitively
diagnosed with a mental disorder.

<u>Id.</u>  Unlike <u>Gough</u>, plaintiff has produced a diagnosis of mental illness or disorder based on

symptomology displayed during her employment.  Indeed, that symptomology formed the basis

of a disability determination by Dr. Ferraro within the eligibility period, and there has been no

suggestion of "malingering" by the plaintiff in this case.  Indeed, as stated previously, the

defendants do not produce any evidence that plaintiff was not disabled from performing her own

job under the policy.  Given these considerations, and plaintiff's medical history as recited above,

the Court finds Gough unpersuasive.

Defendants further appear to argue that plaintiff was not treated by a "physician" as that

term is defined in the Supplemental Policy.  (Opp. Br. at 4, 20-21.)  The Supplemental Policy

defines a "physician" as:

> . . . a person who is licensed by law, and is acting within the scope
> of the license, to treat Injuries or Sickness which results in
> disability . . . .  A Physician must be a licensed psychiatrist or
> licensed doctoral-level psychologist if a disability is due to a
> mental disorder that is classified in the Diagnostic and Statistical
> Manual of Mental Disorders (DSM) . . .

(UACL00037.)  Dr. Papka is a licensed Ph.D-level Neuropsychologist and Psychotherapist,

which qualifies her as a "physician" for the purposes of the Supplemental Policy's definition.

Moreover, the Court rejects defendants' intimation that plaintiff should have been treated by a

State licensed psychiatrist because certification for the psychiatry is a function of the American

Board of Psychiatry and Neurology, not New Jersey State licensing.[4]

Finally, defendants argue that plaintiff's treatment with Wellbutrin does not constitute

sufficient treatment to qualify as "regular and appropriate" treatment under the policies.  (Opp.

---

[4]Psychiatrists in New Jersey are licensed as physicians (medical doctors) with no separate licensure for the practice of psychiatry.  To become a physician one must be licensed under the New Jersey Board of Medical Examiners.  N.J.S.A. §§ 45:9-1 to 45:9-27.9.  Additionally, New Jersey statute defines psychiatrist as "a physician who has completed the training requirements of the American Board of Psychiatry and Neurology."  N.J.S.A. § 30:4-27.2.  Thus, in New Jersey, one may become a psychiatrist by becoming licensed to practice medicine, then board certified to practice psychiatry.

Br. at 22.)  In this regard, the Group Policy provides that, to recover, a beneficiary must show

that she received "the most appropriate treatment and care which conforms with generally

accepted medical standards, for [her] disabling condition(s) by a physician whose specialty or

experience is the most appropriate for [her] disabling condition(s) . . . ."  (UACL00454.)  With

respect to mental illness, the Group Policy provides that such "conditions are usually treated by a

mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or

other similar methods of treatment . . . ."  (UACL00455.)  The Supplemental Policy simply

provides that a beneficiary receive care from a physician "appropriate for the condition causing

[her] disability."  (UACL00036.)  Thus, the Group Policy lists the use of psychotripic drugs, such

as Wellbutrin, as among the acceptable methods of treatment for a mental illness.  With regards

to the timing of such treatment, the Court notes its previous discussion:

> Dr. Papka's report is the first indication in the record that the
> etiology of plaintiff's symptoms was psychiatric rather than
> neurological.  Within weeks of Dr. Papka's diagnosis, plaintiff
> began taking medication of the diagnosed condition – anxiety and
> depression.  Certainly defendants could not expect plaintiff to have
> commenced treatment for her psychiatric conditions until they were
> diagnosed.  Yet, in the end, that is their argument.  Thus,
> defendants' decisions to deny benefits based upon the failure to
> seek appropriate treatment were dubious, at best.

(February 3, 2006 Opinion at 29.)

### E.      Papka's Methodology

Finally, defendants challenge Dr. Papka's methodology.  As the Court acknowledged in

the February 3, 3006 opinion, Unum conceded that Dr. Papka's determinations could be

attributed to psychological factors.  (UACL 00143 stating "the pattern of test results was . . .

indicative of psychological or motivational factors.")  (See February 3, 2006 Opinion at 29.)

Unum addresses this analysis by arguing that its concessions, reviewed "in their entire context,"

show that "it was consistently determined that while psychological factors may have contributed

to O'Connell's alleged disabling condition in theory, there was no evidence in the medical

records submitted by O'Connell that substantiated such a finding."  (Opp. Br. at 28.)  However,

the statement that there was "no evidence" to substantiate plaintiff's claim of disability is

indicative of their failure, or refusal, to recognize such evidence.  Plaintiff's documented medical

history with Dr. Ferraro, the Papka Report, and her use of Wellbutrin, contradict defendants'

position that there was "no evidence" to substantiate a finding.  The Court further notes the

existence of the psychotropic drug Aricept in plaintiff's medical history, the defendants'

acknowledgment of her taking Aricept, and their dismissal of the reference by stating there "is no

reference to her taking this agent on the most recent visits of 1/02/03."  (UACL 00222.)  In the

absence of any evidence contradicting Dr. Papka's conclusions, and given Unum's concession

regarding the etiology of plaintiff's claimed disability, the Court does not find a material issue of

fact with regards to plaintiff's proof of disability during the period of eligibility.

        In short, plaintiff has produced credible medical evidence showing that she suffered from

a disability due to a mental illness or disorder during the period of eligibility.  Defendants have

not argued that plaintiff did not suffer from a disabling condition during the period of eligibility.

They have not caused an independent evaluation of plaintiff to be performed, nor have they

produced any evidence that contradicts plaintiff's proof of disability.  In the absence of

conflicting evidence, and given defendants' concessions, the Court concludes that Unum abused

its discretion in denying plaintiff's claim for disability benefits due to a psychiatric condition.

### III.    CONCLUSION

Given the medical evidence of psychiatric condition, the lack of conflicting evidence by the defendants, and the heightened scrutiny that this Court applies to the administrator's determinations, the Court finds that defendants erred in denying plaintiff's claim for benefits for her disability due to her mental illness and disorder.  For all of these reasons, and those discussed in the Court's Opinion of February 3, 2006, plaintiff's motion for summary judgment awarding plaintiff disability benefits due to a mental illness and disorder is **GRANTED**.  An appropriate Order shall follow.


Dated:  July 25, 2006

/s/Stanley R. Chesler
United States District Judge